

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Geo. H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Sir:

Opinion No. O-1910

Re: Liability of land conveyed
by the Farmers National
Grain Corporation to the
United States of America
to the assessment and col-
lection of State and county
ad valorem taxes for the
year 1937.

By your letter of January 29, 1940, you request of this
Department an opinion upon the validity of the assessment for
State and county ad valorem taxes, of certain lands in Potter
County, Texas, conveyed by the Farmers National Grain Corporation
to the United States of America, and in connection therewith you
submit letters and papers outlining the facts and circumstances
attending the transfer of this property, and the respective
contentions of the two sovereignties in regard to its taxation.

These facts are fully stated in attached letter to you
from Honorable Tom Seay, County Attorney, Potter County, from
which we quote:

"During and prior to 1936 the Farmers National
Warehouse Corporation, which we understand is a sub-
sidiary of the Farmers National Grain Corporation,
was the owner of certain property in Survey 137,
Block 2, AB&M lands in Potter County, Texas, and all
taxes had been paid up to and including 1936. State
and County taxes were assessed against this property
for the year 1937 in the name of the said corporation,

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Hon. Geo. E. Sheppard, page 2

the record title owner as of the date of assessment.
Subsequently, it has been claimed that the title
to this property had been transferred to the United
States. A statement of the facts upon which the
Government relies is contained in a letter from Mr.
Peyton R. Evans, General Counsel of the Farm Credit
Administration, to the Assessor and Collector of
Taxes of this county, dated July 20, 1937, as fol-
lows:

> "'The Farmers National Grain Corporation was
> indebted to the Federal Farm Board (to whose func-
> tions the Farm Credit Administration succeeded
> under the terms of an executive order of the
> President of the United States executed March 27,
> 1933) in a large amount of money, and on June 12,
> 1936 it was agreed between the Farmers National
> Grain Corporation and the Farm Credit Administra-
> tion to transfer a large part of the Corporation's
> assets and those of its subsidiaries to the United
> States Government (Farm Credit Administration) in
> partial extinguishment of the then existing indebt-
> edness. This agreement was subject to the approval
> of the Secretary of the Treasury. The approval of
> the Secretary was obtained on November 7, 1936
> . . . However, a blanket assignment of all of the
> assets covered by the agreement covered by the
> agreement of June 12, 1936 was executed by the
> Farmers National Grain Corporation on October 31,
> 1936. This assignment contained words of grant
> and conveyance and included both real and personal
> property . . . Separate conveyances of particular
> properties have been in preparation for a period
> of some months, and many of them have been de-
> livered, but all have not been put on record. We
> do not consider, however, that the dates of such
> conveyances or the dates of their recordation are
> material in respect to the question of the right
> of the states or their political subdivisions to
> impose taxes thereon.'

"The property in question was conveyed by deed from the
Farmers National Warehouse Corporation to the United
States executed 'all as of October 31, 1936, but actually
on this the 24th day of February, 1937,' which deed was

Hon. Geo. H. Sheppard, page 3

filed for record on December 17, 1937, and recorded in
Volume 280, page 42, of the Deed Records of Potter
County.

"This property was all arbitrarily assessed for taxa-
tion on January 1, 1937, for the year 1937. We find
in the file of the assessor and collector of taxes for
Potter County a printed notice 'that on November 7,
1936, the United States of America became the owner of
all real estate,' and other properties of this corpora-
tion. This notice is dated December 29, 1936, but date
of receipt is not shown."

No question is presented here of the immunity of property
owned and held by the United States of America, from State taxa-
tion of any kind, because it has long been settled beyond dis-
pute that such property, whether owned and held for governmental
purposes or otherwise, is exempt, or more properly, not subject
to the taxes levied by a State, except by Congressional consent.
The only question presented here is whether or not the property
involved was actually owned and held by the United States of
America on January 1, 1937, the date fixed by statute for deter-
mining ownership of property for tax purposes for the year.

Upon this issue of fact regarding ownership of the land
in question on January 1, 1937, that is, whether or not same was
owned and held by Farmers National Grain Corporation on that date
or by the Farm Credit Administration, as an instrumentality or
agency of the United States of America, we find, even in the
statements made by representatives of the United States of
America, a conflict of positions and facts. Hence, we cannot
answer your question categorically but are constrained to answer
same upon the assumption that one or the other state of facts
is true.

In this connection, it should be stated that we do not
have the benefit of a copy of any deed, assignment or other al-
leged muniment of title passing between the Farmers National
Grain Corporation and the United States, and referred to in at-
tached correspondence, but must assume that the facts and state-
ments made in regard thereto correctly reflect the tenor, effect
and reading of such instruments. With this in mind, we call
your attention to the statement contained in letter from Mr.
Peyton R. Evans, General Counsel of the Farm Credit Administra-
tion, to the Assessor-Collector of Taxes for Potter County,
dated July 20, 1937, and hereinabove set out as part of the

Hon. Geo. H. Sheppard, page 4

quoted letter to you by said Assessor-Collector of Taxes. It is
stated therein that the Farmers National Grain Corporation be-
ing indebted to the Federal Farm Board and its successor, the
Farm Credit Administration, agreed, on June 12, 1936, to transfer
a large part of its assets and those of its subsidiaries to
the said Farm Credit Administration in partial extinguishment
of the then existing indebtedness, which agreement was subject
to the approval of the Secretary of the Treasury. Under the
Statutes of Texas governing conveyancing and the passage of
title to real estate, such understanding and agreement would
not suffice to transfer title to real estate, but the statement
is further made that "a blanket assignment of all of the assets
covered by the agreement of June 12, 1936, was executed by the
Farmers National Grain Corporation on October 31, 1936, which
assignment contained words of grant and conveyance and included
both real and personal property."

We are not able to say that the above described instru-
ment did not vest in the United States of America, through the
Farm Credit Administration, title to the realty in question here,
upon its approval by the Secretary of the Treasury. We are not
unmindful of the fact that the usual and customary mode of
transferring title to real estate in Texas is by general warranty
deed, in the form prescribed by statute, containing the usual
formal component parts of premises, habendum, tenendum, reddendum,
warranty and testimonium clauses. And if such instrument or
deed was the sine qua non to passage of title in Texas, then we
would say that the property here would be subject to State and
county ad valorem taxes for the year 1937, because such deed,
in this usual statutory form, was not executed until the 24th
day of February, A. D. 1937. Nor would our conclusion be
altered by the fact that said deed purported to relate back,
"all as of October 31, 1936," because, in our opinion, the actual
date of execution would govern.

But it is a rule of law too well established to require
elaboration here, that title to real estate in Texas may pass
by any written instrument which contains express words of grant
or conveyance, thereby evidencing an intent between the parties
to effect a transfer of title, and it is not necessary that the
form of general warranty deed, suggested by the law makers, be
literally followed to accomplish this purpose. We have before
us the unqualified statement that on October 31, 1936, a written
blanket assignment, covering among other assets and properties,
the real estate involved in the instant inquiry, was duly executed

Hon. Geo. H. Sheppard, page 5

by and between the Farmers National Grain Corporation and the Farm Credit Administration, purporting to convey said property, and containing words of grant and conveyance to this end, and being in consummation of an agreement made on June 12, 1936, between the parties to make such transfer. It is further stated that the necessary approval of the Secretary of the Treasury was obtained on November 7, 1936. Not having a copy of this assignment before us, and giving full credence to the aforesaid statements, we are impelled to the conclusion that not only the equitable, but the legal title as well, to the real estate in question, was vested in the United States, through the Farm Credit Administration, before January 1, 1937, and, consequently, under admitted principles of law, was not subject to State and county taxation for the year 1937.

On the other hand, we are confronted with a statement from another representative of the United States of America or one of its duly constituted instrumentalities and agencies, which presents a different aspect upon the question of the exact date, with reference to January 1, 1937, that title to this real estate passed from the Farmers National Grain Corporation to the United States. This statement is in the form of a letter from Honorable W. E. Daly, Assistant to General Counsel, Federal Land Bank of Houston, to Miss Jewel Davidson, Assessor-Collector, Potter County, of date June 29, 1937, and we quote the pertinent parts thereof as follows:

"Reference is made to your letters of May 28th and June 24 regarding the transfer of ownership of certain properties in Potter County from the Farmers National Warehouse Corporation to the United States of America.

"I have in my possession a deed executed under date of February 24th, 1937, by the Farmers National Warehouse Corporation, conveying to the United States of America the following described property:

. . .

"This deed has not actually been accepted, and negotiations are now pending which will in all probability result in the acceptance of the deed. When this transaction is consummated the deed will, of course, be forwarded to Potter County for recording."

Should full faith and credit be accorded to the foregoing statement from an authorized representative of the grantee of the

property here, the United States of America, through the Farm Credit Administration, then our answer would be diametrically opposite to that heretofore given. It is settled law in Texas that a deed or any other instrument, purporting to convey realty, does not divest title out of the grantor and vest same in the grantee, until there has been an actual acceptance of such deed or other instrument by said grantee. The laws of the State where property is located govern exclusively the construction and effect of all instruments intended to convey it. Hence, if, at the writing of the above quoted letter, to-wit June 29, 1937, the transaction described herein had not been consummated by acceptance, either expressly or impliedly, of the deed or other instrument purporting to convey title to this realty, then title thereto would, on that date, remain in the Farmers National Grain Corporation, a private corporation, and would be subject to State and county ad valorem taxes assessed against same for the year 1937.

We realize that this opinion cannot be useful to you until the conflicting factual statement appearing here is resolved one way or the other, and to this end, we suggest that you further develop the facts in the light of the foregoing discussion and be governed thereby in your findings.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By
Pat M. Neff, Jr.
Assistant

PMN:N

APPROVED FEB 27, 1940

ATTORNEY GENERAL OF TEXAS

APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN